UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HOWARD MUEHLGAY, | : | |
| | : | |
| Plaintiff, | : | COMPLAINT |
| | : | |
| - against - | : | |
| | : | |
| ALCOA CORPORATION, | : | |
| | : | |
| Defendant. | : | |

Plaintiff Howard Muehlgay ("Plaintiff"), by and through his undersigned attorneys, brings this complaint against Alcoa Corporation ("Alcoa", the "Company" or "Defendant"), seeking to remedy the Company's violations of § 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(a) (the "Exchange Act"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes without limitation review and analysis of public filings made by the Company with the U.S. Securities and Exchange Commission ("SEC").

## NATURE OF THE ACTION

1. This is a direct stockholder action under Section 14(a) of the Exchange Act.

2. Plaintiff is a long-standing stockholder of the Company and seeks relief for the Company's failure to comply with certain disclosure rules concerning the Company's proxy statements that were issued by the SEC under the Exchange Act, 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) ("Item 10(a)(1)").

3. The relevant part of Item 10(a)(1) states:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

2

   (a)  Plans subject to security holder action.

     (1)  Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

4.  The Company did not comply with the above-referenced regulations regarding two (2) recommendations by the Board of Directors ("Board") on compensation plans – Voting Items 5 and 6 – at the Company's May 10, 2017 annual stockholders' meeting.

5.  Plaintiff seeks an order nullifying the votes made and the corporate actions taken based on them. Voting Item 5 was for stockholder approval of the Company's Annual Cash Incentive Plan (the "Annual Plan"), which the Board recommended a vote "FOR." Voting Item 6 was for stockholder approval of the Company's 2016 Stock Incentive Plan (the "Stock Plan"), which the Board recommended a vote "FOR."

6.  Unless the Company initiates new stockholder approved compensation plans at the Company's 2018 annual meeting, it will not have any plan to provide tax-deductible compensation under I.R.C. § 162(m).

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

8.  Relating to the acts, omissions, conduct, and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

Venue is proper in this district because under Section 27(a) of the Exchange Act, this district is where the violation at issue in this case occurred as the plaintiff is a resident of this district.

## PARTIES

9. Plaintiff is, and has been, a holder of Alcoa common stock since December 4, 2008.

10. Alcoa is a corporation organized under the laws of the State of Delaware. Alcoa purports to be a global industry leader in the production of bauxite, alumina, and aluminum, with a strong portfolio of value-added cast and rolled products, as well as substantial energy assets. Alcoa purports to be built on a foundation of strong values and operating excellence dating back nearly 130 years to the world-changing discovery that made aluminum an affordable and vital part of modern life.

11. According to the Company's most recent Form 10-K filed with the SEC:

> **Separation Transaction**
>
> On September 28, 2015, Alcoa Inc. ("ParentCo") announced its intention to separate ParentCo into two standalone, publicly-traded companies (the "Separation Transaction"). Alcoa Corporation was formed to hold ParentCo's Bauxite, Alumina, Aluminum, Cast Products and Energy businesses, as well as ParentCo's rolling mill operations in Warrick, Indiana, and ParentCo's 25.1% interest in the Ma'aden Rolling Company in Saudi Arabia (the "Alcoa Corporation Business"). Following the Separation Transaction, Alcoa Corporation holds the assets and liabilities of ParentCo relating to those businesses and the direct and indirect subsidiary entities that operated the Alcoa Corporation Business, subject to certain exceptions. Upon completion of the Separation Transaction, ParentCo was renamed Arconic Inc. ("Arconic") and now holds ParentCo's Engineered Products and Solutions, Global Rolled Products (other than the rolling mill operations in Warrick, Indiana, and the 25.1% interest in the Ma'aden Rolling Company in Saudi Arabia) and Transportation and Construction Solutions businesses (the "Arconic Business"), including those assets and liabilities of ParentCo and its direct and indirect subsidiary entities that operated the Arconic Business, subject to certain exceptions.
>
> On September 29, 2016, the ParentCo Board of Directors approved the distribution of 80.1% of Alcoa Corporation's issued and outstanding

shares of common stock on the basis of one share of Alcoa Corporation common stock for every three shares of ParentCo common stock held as of the close of business on October 20, 2016, the record date for the distribution (the "Distribution").

The Separation Transaction and the Distribution were subject to a number of conditions, including, but not limited to: final approval by ParentCo's Board of Directors [..]; the continuing validity of the private letter ruling from the Internal Revenue Service regarding certain U.S. federal income tax matters relating to the transaction; receipt of an opinion of legal counsel regarding the qualification of the Distribution, together with certain related transactions, as a transaction that is generally tax-free for U.S. federal income tax purposes; and the SEC declaring effective a Registration Statement on Form 10, as amended, filed with the SEC on October 11, 2016 (effectiveness was declared by the SEC on October 17, 2016).

On November 1, 2016, the Separation Transaction was completed and became effective at 12:01 a.m. Eastern Standard Time, at which time Alcoa Corporation became an independent, publicly traded company. To effect the Separation Transaction, ParentCo undertook a series of transactions to separate the net assets and certain legal entities of ParentCo, resulting in a cash payment of approximately $1.1 billion to ParentCo by Alcoa Corporation using the net proceeds of a debt offering. Also at 12:01 a.m. Eastern Standard Time on November 1, 2016, the Distribution occurred. Immediately following the Distribution, Alcoa Corporation stockholders owned directly 80.1% of the outstanding shares of common stock of Alcoa Corporation, and Arconic retained 19.9% of the outstanding shares of common stock of Alcoa Corporation. 146,159,428 shares of Alcoa Corporation common stock were distributed to ParentCo stockholders, and Arconic retained 36,311,767 shares of Alcoa Corporation common stock representing its 19.9% retained interest (on February 14, 2017, Arconic sold 23,353,000 of these shares). ParentCo stockholders received cash in lieu of any fractional shares of Alcoa Corporation common stock that they would have received after application of the distribution ratio. Upon completion of the Separation Transaction and the Distribution, each ParentCo stockholder as of the record date continued to own shares of ParentCo (which, as a result of ParentCo's name change to Arconic, are Arconic shares) and owned a proportionate share of the outstanding common stock of Alcoa Corporation that was distributed. Parents stockholders were not required to make any payment, surrender or exchange their Parents common stock or take any other action to receive their shares of Alcoa Corporation common stock in the Distribution. "Regular-way" trading of Alcoa Corporation's common stock began with the opening of the New York Stock Exchange ("NYSE") on November 1, 2016 under the ticker symbol

"AA." Alcoa Corporation's common stock has a par value of $0.01 per share.

## THE COMPANY'S WRONGFUL ACTIONS AND OMISSIONS

12. On March 17, 2017, the Board provided shareholders with a Proxy Statement in connection with the Company's 2017 Annual Meeting of Stockholders to be held on Wednesday, May 10, 2017, at 10:00 a.m., local time, at the David L. Lawrence Convention Center, Room 405, 1000 Fort Duquesne Boulevard, Pittsburgh, Pennsylvania, 15222, and at any adjournment or postponement thereof.

13. Item 10(a)(1) of Schedule 14A requires that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed," the proxy statement soliciting this vote must "[d]escribe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

14. The Annual Plan was to become effective upon the stockholders' approval at the May 10, 2017 Annual Meeting. But the Company's stockholders' vote was ineffective as there were omissions from the Proxy Statement that was required by Item 10(a)(1).

15. The Annual Plan provides for the payment of bonuses in cash – and only in cash – for Alcoa officers and key employees for work in each fiscal year or such shorter period as may be determined.

16. The Annual Plan provides in relevant part:

> In connection with the Separation, the Company adopted the 162(m) Annual Incentive Plan, which is administered by the Committee. Each executive officer designated by the Committee is eligible to participate in the 162(m) Annual Incentive Plan. The Company's annual IC plan has been structured with the intent of enabling the Committee to award compensation that constitutes performance-based compensation under Section 162(m) of the Code.

6

At the beginning of each performance period, the Committee will designate the participants and establish specific performance goals applicable to the awards and incentive amounts that may be earned by participants. Performance periods will typically be a fiscal year of Alcoa or such shorter period as may be designated by the Committee with respect to an award. The Committee has the discretion to structure awards in any manner it deems advisable, including specifying that the award may become payable in the event of death, disability or a change in ownership or control to the extent permissible under Section 162(m) of the Code. The Committee may also structure awards as an allocation of a cash bonus pool for bonus pool participants, provided that, among other matters, each participant allocation satisfies the maximum individual amount limit set forth in the Section 162(m) Annual Incentive Plan of $9,000,000 per participant for each fiscal year performance period.

The performance goals applicable to awards granted under the Section 162(m) Annual Incentive Plan will relate to one or more of the following (and, if applicable, may be normalized for fluctuations in currency or the price of aluminum on the LME) as determined by the Committee: (i) earnings, including operating income, earnings before or after taxes, and earnings before or after interest, taxes, depreciation, and amortization; (ii) book value per share; (iii) pre-tax income, after-tax income, income from continuing operations, or after tax operating income; (iv) operating profit or improvements thereto; (v) earnings per common share (basic or diluted) or improvements thereto; (vi) return on assets (net or gross); (vii) return on capital; (viii) return on invested capital; (ix) sales, revenues or returns on sales or revenues or growth in sales, revenues or returns on sales or revenues; (x) share price appreciation; (xi) total shareholder return; (xii) cash flow, operating cash flow, free cash flow, cash flow return on investment (discounted or otherwise), improvements in cash on hand, reduction of debt, improvements in the capital structure of the Company including debt to capital ratios; (xiii) implementation or completion of critical projects or processes; (xiv) economic profit, economic value added or created; (xv) cumulative earnings per share growth; (xvi) achievement of cost reduction goals; (xvii) return on shareholders' equity; (xviii) total stockholders' return improvement or relative performance as compared with other selected companies or as compared with Alcoa, a subsidiary, division or business unit history; (xix) reduction of days working capital, working capital or inventory; (xx) operating margin or profit margin or growth thereof; (xxi) cost targets, reductions and savings, productivity and efficiencies; (xxii) strategic business criteria, consisting of one or more objectives based on meeting specified market penetration, geographic business expansion, customer satisfaction (including improvements in product quality and delivery),

7

employee satisfaction, human resources management including improvements in diversity representation, supervision of litigation, information technology, and goals relating to acquisitions, divestitures, joint ventures and similar transactions, and budget comparisons; (xxiii) personal professional objectives, including any of the foregoing performance goals, the implementation of policies and plans, the negotiation of transactions, the development of long-term business goals, formation of joint ventures, research or development collaborations, technology and best practice sharing within Alcoa, and the completion of other corporate goals or transactions; (xxiv) the achievement of sustainability measures, community engagement measures or environmental, health or safety goals of Alcoa or a subsidiary, division or business unit of Alcoa for or within which the participant is primarily employed; (xxv) improvement in performance against competition benchmarks approved by the Alcoa Compensation Committee; or (xxvi) improvements in audit and compliance measures. The Committee may also specify adjustments and any inclusion(s) or exclusion(s) for charges related to any event(s) or occurrence(s) which the Committee determines should be included or excluded, as appropriate, for purposes of measuring performance against the applicable performance goals.

The Committee also uses the Incentive Compensation Plan, described under "Incentive Compensation Plan" below, as a sub-plan to the Section 162(m) Annual Incentive Plan to supplement the terms and conditions of awards granted under the Section 162(m) Annual Incentive Plan.

17. The Annual Plan does not specify a termination date.

18. The Annual Plan states that the maximum amount payable to a Company employee who is a "covered employee" under IRC § 162(m) is $9,000,000 per fiscal year. The Annual Plan does not state a limit for any other Company employee.

19. The Stock Plan was to become effective upon the stockholders' approval at the May 10, 2017 Annual Meeting. But the Company's stockholders' vote was ineffective because of the omission from the Proxy Statement of the information required by Item 10(a)(1).

20. The Stock Plan provides for stock-based compensation for the Company employees and directors. Such compensation can be in the form of stock options, stock appreciation rights,

restricted stock, restricted stock units, any other right based on the Company stock, and other rights based on or denominated in cash or other property. The Stock Plan provides that compensation based on performance shall require a minimum period to achieve the performance of not less than one year, but, for awards not meant to comply with IRC § 162(m), there is no minimum period for the vesting of stock options or stock appreciation rights or the lapse of restrictions on stock or restricted stock units.

**Summary Description of the Amended Plan**

The following is a summary of the principal provisions of the Amended Plan, which is qualified in its entirety by reference to the complete text of the Amended Plan, a copy of which is attached as Attachment D to this Proxy Statement. To the extent the description below differs from the text of the Amended Plan set forth in Attachment D, the text of the Amended Plan controls.

**Administration**

The Amended Plan will be administered by the Committee, or such other committee of the Board that is comprised solely of two or more "outside directors" within the meaning of Section 162(m). The Amended Plan authorizes the Committee to make stock-based awards to employees of the Company, and the full Board may grant awards thereunder to non-employee directors. The Board or the Committee may delegate its authority under the Amended Plan, consistent with the terms of the Amended Plan and applicable law, including to executive officers in limited instances to make, cancel or suspend awards to employees who are not Alcoa directors or executive officers.

The Committee has the authority, subject to the terms of the Amended Plan, to select employees to whom it will grant awards, to determine the types of awards and the number of shares covered, to set the terms and conditions of the awards, to cancel or suspend awards and to modify outstanding awards. The Committee also has authority to interpret the Amended Plan, to establish, amend and rescind rules applicable to the Amended Plan or awards under the Amended Plan, to approve the terms and provisions of any agreements relating to Amended Plan awards, to determine whether any corporate transaction, such as a spin-off or joint venture, will result in a participant's termination of service and to make all determinations relating to awards under the Amended Plan. The Board has similar authority with respect to awards to non-employee directors.

**Limitation on Authorized Shares and Fungible Equity Pool**

We are requesting 11,000,000 shares be added to our share reserve under the Amended Plan for a total attributed share pool, subject to the adjustment and other provisions or the Amended Plan, of 30,000,000 shares. The Amended Plan has a total fungible equity pool, assigning a ratio for counting usage of shares upon issuance of stock options and SARs of one to one so that a grant of a stock option or SAR will be counted against the share limit as one share of common stock, and assigning a ratio for counting usage of shares upon issuance of full-value awards (restricted shares and restricted share units) of 2.33 to one from November 1, 2016 until May 10, 2017 and 1.63 to one from May 10, 2017 thereafter, so that any grant of a full value award will be counted against the maximum share limit as 2.33 or 1.63, as applicable, shares of common stock. Shares subject to awards that are granted in cash, or cash-settled awards, will not count against the shares authorized for issuance under the Amended Plan.

\*   \*   \*

**Eligibility**

Employees of Alcoa and its subsidiaries and the non-employee directors of Alcoa are eligible to be selected as participants. As of March 1, 2017, approximately 1,000 current and former employees hold awards under the Current Plan and 11 non-employee directors participate in the Plan.

Because our executive officers and non-employee directors are eligible to receive awards under the Amended Plan, they may be deemed to have a personal interest in the approval of this Proposal 6.

**Shares Issuable for Awards**

Shares of Alcoa common stock issuable under the Amended Plan may come from authorized but unissued shares, treasury shares, shares purchased on the open market or otherwise.

**Types of Awards**

The following types of awards may be granted under the Amended Plan:

- Stock options;
- SARs;
- Restricted shares;
- Restricted share units;
- Performance awards; and
- Other awards.

10

**Stock Option Awards**

Options entitle a participant to purchase shares of Alcoa common stock during the option term at a fixed price that is equal to the fair market value of the Company's stock on the date of the grant. Options may be (i) ISOs that are intended to qualify under particular provisions of the Code, (ii) options that are not intended to be ISOs, or (iii) a combination of the foregoing. ISOs may only be granted to participants who meet the definition of "employees" under Section 3401(c) of the Code.

The maximum term of stock options granted is ten years, or five years in the case of ISOs granted to a 10% Stockholder (as such term is defined in the Amended Plan). Subject to the other provisions of the Amended Plan, a stock option may be exercised, and the participant may make payment of the exercise price in such form or forms, including, without limitation, payment by delivery of cash, shares or other consideration (including, where permitted by law and the Committee, awards) having a fair market value on the exercise date equal to the total stock option price, or by any combination of cash, shares and other consideration as the Committee may specify in the applicable award agreement.

21. The Stock Plan provides that no awards shall be granted under it after May 10, 2027, "but any Award theretofore granted may extend beyond that date. The Plan, as amended and restated, becomes effective upon approval of the Plan at the Company's Annual Meeting of Stockholders to be held on May 10, 2017 (or such other date upon which the Company's Stockholders approve the Plan). If the Plan, as amended and restated, is not so approved, then the Plan, as in effect immediately prior to such Annual Meeting, shall remain in effect."

22. The Stock Plan provides that the maximum amount to a Company employee in any one fiscal year is 10,000,000 shares for stock options and/or stock appreciation rights. Further, the maximum amount to a Company employee in any one fiscal year is 4,000,000 restricted shares plus 4,000,000 restricted share units, if they are to be IRC § 162(m) compliant. In addition, the maximum amount to a Company employee in any one fiscal year is $15,000,000 for an IRC § 162(m) award that is valued in cash or property other than Company stock. If they are not to be

11

IRC § 162(m) compliant, the Stock Plan provides no limit at all.

23.     Voting Items 5 (Approval of the Annual Plan) and 6 (Stock Plan) of the Proxy Statement failed to disclose the classes of eligible participants, their approximate number, and the bases of their participation for the Annual Plan and the Stock Plan.  Therefore, the solicitation of these votes did not comply with the SEC regulations, and it was unlawful under § 14(a) of the Exchange Act.

24.     As a result of the disclosure violations for Voting Items 5 and 6, the Annual Plan and the Stock Plan are ineffective, and only the predecessors to those plans remain in effect.  But for purposes of retaining the IRC § 162(m) tax-deduction, those predecessor plans are only good until the annual stockholders' meeting in 2018 for the payment and award of IRC § 162(m) compliant compensation.  This is because under Treas. Reg. 1.162-27(f)(4)(iii), the IRC § 162(m) transition period that Alcoa is currently enjoying as a result its spin-off from Alcoa, Inc. only lasts until "the first regularly scheduled meeting of the shareholders of the new publicly held corporation that occurs more than 12 months after the date the corporation becomes a separate publicly held corporation."  This means that Alcoa can only continue to deduct compensation under IRC § 162(m) under the predecessor plans to the Annual Plan and the Stock Plan under the 2018 annual meeting.

25.     In order to continue providing compensation that is deductible under IRC § 162(m), the Company must re-submit the Annual Plan and the Stock Plan for stockholder approval by no later than its 2018 annual meeting, and the 2018 proxy statement must be compliant with Item 10(a)(1).

## COUNT I

### (Exchange Act Violations Regarding Voting Item 5)

26.     Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

27. Plaintiff has been and will be injured, and he has no adequate remedy at law. He has suffered and will suffer harm in the form of uninformed votes by other stockholders on Voting Item 5.

28. To ameliorate the injury, relief is required in the form of an equitable decree nullifying the vote and the corporate actions taken based on it. Relief is required in the form of an equitable decree that the Company should re-solicit stockholder approval of the Annual Plan with a new Proxy Statement that provides the information required by Item 10(a)(1) no later than the 2018 annual meeting.

## COUNT II

### (Exchange Act Violations Regarding Voting Item 6)

29. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

30. Plaintiff has been and will be injured, and he has no adequate remedy at law. He has suffered and will suffer harm in the form of an uninformed vote by other stockholders on Voting Item 6.

31. To ameliorate the injury, relief is required in the form of an equitable decree nullifying the vote and the corporate actions based on it. Relief is required in the form of an equitable decree that the Company should re-solicit stockholder approval of the Stock Plan with a new proxy statement that provides the information required by Item 10(a)(1) no later than the 2018 annual meeting.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A. An equitable decree nullifying the votes taken on Voting Items 5 and 6 and the

corporate actions based on those votes;

  B. A new proxy statement re-soliciting votes on the Annual Plan and the Stock Plan with the information required by Item 10(a)(1) no later than the 2018 annual meeting;

  C. An equitable decree that the non-employee directors' restricted stock units granted on May 12, 2017 will vest not sooner than May 12, 2020.

  D. Awarding such other and further relief as this Court deems just and proper.

Dated: August 29, 2017

              **GAINEY McKENNA & EGLESTON**

              By: */s/ Thomas J. McKenna*
                Thomas J. McKenna
              Gregory M. Egleston
              440 Park Avenue South
              New York, NY 10016
              Telephone: (212) 983-1300
              Facsimile: (212) 983-0380
              Email: tjmckenna@gme-law.com
              Email: gegleston@gme-law.com

              ***Attorneys for Howard Muehlgay***